IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

GREGORY SHARKEY,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C13-1037

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.     *INTRODUCTION* ................................................ 2

II.    *PRINCIPLES OF REVIEW* .................................. 2

III.   *FACTS* ............................................................ 4
     A.   *Sharkey's Education and Employment Background* ............. 4
     B.   *Vocational Expert's Testimony from the Administrative Hearing* .... 4
     C.   *Sharkey's Medical History* ................................. 5

IV.   *CONCLUSIONS OF LAW* .................................... 9
     A.   *ALJ's Disability Determination* ............................. 9
     B.   *Objections Raised By Claimant* ............................. 12
          1.   *Substance Abuse* ................................... 12
          2.   *Healy's Opinions* .................................. 17
          3.   *Third-Party Functional Report* ...................... 21

V.    *CONCLUSION* ................................................ 23

VI.   *ORDER* ........................................................ 23

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Gregory Sharkey on December 5, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits.[1] Sharkey asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Sharkey requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On January 23, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have

decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Sharkey's Education and Employment Background

Sharkey was born in 1971. Sharkey did not graduate from high school, but later earned a GED. In the past, Sharkey worked as an iron worker and construction worker.

### B. Vocational Expert's Testimony from the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Julie Svec with a hypothetical for an individual who could:

> occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. This individual could stand or walk for six hours in an eight hour workday and sit for six hours in an eight hour workday. His ability to push and pull, including the operation of hand and foot controls would be unlimited within those weights. He could occasionally climb ramps and stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch, and crawl. Further, this individual would be able to do only simple, routine tasks . . . and he could have only short lived, superficial contact with the public, coworkers, or supervisors.

(Administrative Record at 71.) The vocational expert testified that under such limitations, Sharkey could not perform his past relevant work. The vocational expert testified, however, that Sharkey could perform the following jobs: (1) folder (900 positions in Iowa and 50,000 positions in the nation), (2) cleaner (1,500 positions in Iowa and 200,000 positions in the nation), and (3) laundry sorter (1,500 positions in Iowa and 93,000 positions in the nation). The ALJ further inquired:

> Q:     All right, if I would add to the hypothetical question
>        that the individual would miss three or more days of
>        work per month, would there be any jobs he could do?

A:    No, there would not.
Q:    How about if he required frequent unscheduled breaks
      from work in addition to his regularly scheduled
      breaks?
A:    No work would be possible.

(Administrative Record at 72-73.)

### C. Sharkey's Medical History

On July 30, 2010, Sharkey presented at Hillcrest Mental Health Center in Dubuque, Iowa. Sharkey reported that:

> he just left Anamosa prison after a 3 year stay. [He] reported
> that he is here for anxiety, mood management and self control.
> He reported that he has a lot of anger and self control
> problems. He denied feeling depressed, now he is more
> angry. He denied suicidal ideation but indicated some
> homicidal ideation but has no plan or intent to harm others.
> He reported that he wants to get things under control. He
> reported that [h]e has been forcing rage down for 3 years since
> he went to prison.

(Administrative Record at 287.) Sharkey also reported that prior to going to prison, he drowned "himself with alcohol and drugs."[2] Sharkey stated that in the past "his treatment never had a chance because of his substance use."[3] Michelle Watters, LMHC, noted the following symptoms for Sharkey: agitation, hopelessness, irritability, loss of concentration, loss of energy, loss of interest, loss of motivation, difficulty sleeping, worthlessness, tiredness/fatigue, worrying, racing thoughts, aggression, fighting, distractability, becoming easily frustrated, impatience, impulsiveness, and short attention span. Watters diagnosed Sharkey with bipolar disorder, anxiety disorder, and intermittent explosive disorder. Watters assessed Sharkey with a GAF score of 45. Watters recommended medication and therapy as treatment.

---

[2] Administrative Record at 290.

[3] *Id.* at 289.

5

Sharkey returned to Hillcrest on September 20, 2010, for medication management. Andi Hemesath, ARNP, noted that Sharkey was using marijuana daily. Hemesath assessed Sharkey with a GAF score of 55. Hemesath recommended that Sharkey continue medication as treatment.

On October 4, 2010, Sharkey was referred by Disability Determination Services ("DDS") to Brenna Healy, M.A., for a psychological evaluation. In reviewing Sharkey's personal history, Healy noted:

> [Sharkey] was incarcerated for three years including stays at Anamosa, Fort Madison, and Clarinda. He was found guilty of first degree burglary although he did not believe the conviction was fair. He has a history of aggressive behavior and fighting dating back to early adolescence. He was in Eldora for a period of time and completed his GED after leaving school following tenth grade. He reports a history of three OWIs along with marijuana possession. In the past, he made money from selling drugs and selling stolen merchandise.

(Administrative Record at 296.) Sharkey described his current mood as depressed with crying spells and frequent anger. He reported weekly panic attacks, and stated that he "hears voices telling him to hurt other people but says he can talk himself out of it."[4] Sharkey also claimed that concentration was a problem and caused him to lose various jobs in the past. Sharkey told Healy that he had not used alcohol or drugs since 2007, and denied any cravings. Healy diagnosed Sharkey with bipolar disorder, polysubstance abuse in remission, and personality disorder with anti-social features. Healy concluded that:

> [Sharkey] appears to have moderate limitation in being able to remember and understand instructions, procedures, and locations. He has significant impairment in his ability to maintain attention, concentration, and pace. He is significantly impaired in his ability to interact appropriately

---

[4] Administrative Record at 297.

> with others and has significant impairment in his ability to use
> good judgment and respond appropriately to changes in the
> work place. . . . Prognosis appears poor.

(Administrative Record at 298.)

On October 6, 2010, Dr. Sandra Davis, Ph.D., reviewed Sharkey's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Sharkey. On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Sharkey with bipolar affective disorder, anxiety, personality disorder with anti-social, dependent, and borderline features, intermittent explosive disorder, and polysubstance abuse/dependence in alleged remission. Dr. Davis determined that Sharkey had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis determined that Sharkey was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Davis concluded that:

> when medication compliant and substance free, he has
> demonstrated completely normal mental status and adequate
> cognitive functioning. At present time, his [activities of daily
> living] are relatively limited, ostensibly due to depression and
> poor motivation. He has a history of poor interpersonal
> interactions, but has demonstrated ability to get along with

others while in a structured environment that insures abstinence and medication compliance. He has been known to be less than candid about his substance use in the past and less than medically compliant with meds. I think that when he is medication compliant and substance free, he can handle simple and some detailed tasks with adequate attention and concentration. . . . [H]e has difficulty taking orders and would do best with minimal interpersonal demands. He would need preparation for rapid or complex changes.

(Administrative Record at 302.)

On October 26, 2010, Sharkey was referred by DDS to Dr. Howard T. Kim, M.D., for a physical examination. Sharkey's chief complaints were back pain and joint pain. With regard to his back pain, Sharkey noted that the pain also spread down his left leg into his foot, causing numbness and tingling. He rated his pain between 6 out of 10, with 10 being the most severe pain, and 9 out of 10. Sharkey also complained of joint pain and arthritis in his shoulders, elbows, wrists, and knees. Upon examination, Dr. Kim diagnosed Sharkey with back pain and arthritis. Dr. Kim opined that Sharkey's psychiatric issues should be "adequately addressed, treated, and controlled before his physical capabilities are addressed."[5] Dr. Kim concluded that:

Based on [Sharkey's] history and physical examination, [he] appears capable of lifting and carrying up to 10 pounds occasionally. He should avoid prolonged standing and walking, squatting, crawling, climbing, and repetitive bending and stooping. He should be able to switch positions as often as he needs for comfort.

(Administrative Record at 321.)

On November 18, 2010, Dr. Rene Staudacher, D.O., reviewed Sharkey's medical records and provided DDS with a physical RFC assessment for Sharkey. Dr. Staudacher determined that Sharkey could: (1) occasionally lift and/or carry 20 pounds, (2) frequently

---

[5] Administrative Record at 321.

lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staudacher also determined that Sharkey could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Staudacher found no manipulative, visual, communicative, or environmental limitations.

On May 12, 2011, Sharkey returned to Hillcrest for medication management. Hemesath noted that Sharkey "[a]ssaulted a woman in her driveway after she refused to give him a ride on a snowy day. He was very drunk when he did this."[6] Hemesath diagnosed Sharkey with bipolar disorder, intermittent explosive disorder, and anti-social personality disorder. Hemesath assessed Sharkey with a GAF score of 55. Sharkey had another medication management appointment on June 13, 2011. At this appointment, he admitted using a "little weed." His GAF score continued to be 55. Hemesath, again, recommended medication as treatment.

On January 30, 2012, Sharkey was admitted overnight at Finley Hospital in Dubuque, Iowa, for a drug overdose. Urine screens were positive for opiates, cocaine, amphetamine, marijuana, benzodiazepine, and TCA. Sharkey was diagnosed with altered mental status, polysubstance abuse, and multiple drug/substance overdose. Sharkey was discharged on January 31, and ordered to attend a drug rehabilitation program.

### IV. CONCLUSIONS OF LAW

#### A. ALJ's Disability Determination

The ALJ determined that Sharkey is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42

---

[6] *Id.* at 343.

(1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant

work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Sharkey had not engaged in substantial gainful activity since July 30, 2010. At the second step, the ALJ concluded from the medical evidence that Sharkey had the following severe impairments: bipolar affective disorder, anxiety disorder with anti-social, dependent, and borderline features, substance abuse disorder, and lumbar degenerative changes. At the third step, the ALJ found that Sharkey's impairments, including his substance use disorder, meet section 12.09 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. However, also at step three, the ALJ determined that if Sharkey stopped his substance use, he would not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined that if Sharkey stopped his substance use, his RFC would be as follows:

> [Sharkey] would have the residual functional capacity to perform light work . . . such that he can lift twenty pounds occasionally and ten pounds frequently; stand and walk for six out of eight hours in a workday; and sit for six out of eight hours in a workday. His ability to push and pull, including the

> operation of hand and foot controls is unlimited within those
> weights, and he can occasionally climb ramps, stairs, ladders,
> ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl.
> [Sharkey] is limited to simple, routine work, at an SVP of one
> or two, and can only have short-lived, superficial contact with
> the public, co-workers, and supervisors.

(Administrative Record at 32.) Also at the fourth step, the ALJ determined that Sharkey could not perform his past relevant work. At the fifth step, the ALJ determined that if he abstained from substance use, then based on his age, education, previous work experience, and RFC, Sharkey could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Sharkey was not disabled.

### B. Objections Raised By Claimant

Sharkey argues that the ALJ erred in three respects. First, Sharkey argues that the ALJ erred in finding that substance abuse was a contributing factor material to an otherwise favorable disability determination. Second, Sharkey argues that the ALJ improperly weighed the opinions of Brenna Healy, a consultative examining source. Lastly, Sharkey argues that the ALJ erred by disregarding the third-party functional report of a lay witness, Sharkey's mother, Cindy O'Neal.

### 1. Substance Abuse

Sharkey apparently concedes that the ALJ properly followed the methodology for determining whether substance use is a contributing factor material to the determination of disability. Sharkey takes issue with the ALJ's conclusion that if he stopped his substance use, he would not be disabled and have the functional capacity to perform work that exists in significant numbers in the national economy. Sharkey maintains that even if substance use is removed as a factor in determining disability, he has non-substance abuse impairments which support a finding of disability. Specifically, Sharkey maintains that even if he stopped his substance abuse, he would continue to have marked limitations in the areas of social functioning and concentration, persistence, or pace; thereby,

12

supporting a finding of disability. Sharkey concludes that the ALJ's decision on the issue of substance abuse is not based on substantial evidence on the record as a whole.

In 1996, Congress amended the Social Security Act to eliminate benefits for disabilities arising from addiction to alcohol or other drugs. *See* Pub. L. No. 104-121, 110 Stat. 847; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (discussing the 1996 Congressional amendment); *Jackson v. Apfel*, 162 F.3d 533, 537 (8th Cir. 1998) (same). The regulations implemented this law at 20 C.F.R. § 404.1535 (relating to applications for disability insurance benefits) and 20 C.F.R. § 416.935 (relating to applications for SSI benefits). The two sections are identical and provide as follows:

> How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
>> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>>
>> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(I)   If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.

According to the regulations, the ALJ must first determine whether the claimant is disabled.  *See* 20 C.F.R. § 416.935 ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)).  "The ALJ must reach this determination initially . . . using the five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694 (citation omitted).

If the ALJ determines that all of a claimant's limitations, including the effects of substance use disorders, show that the claimant is disabled, then the ALJ "must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95 (citing *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2)).  "The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit*, 218 F.3d at 903 (citations omitted).  The claimant carries the burden of proving that alcoholism or drug addiction is not a material factor to the finding of disability.  *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)).  "If the ALJ is unable to determine whether

substance abuse disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. . . . In colloquial terms, on the issue of materiality of alcoholism, a tie goes to [the claimant]." *Brueggemann*, 348 F.3d at 693 (citation omitted). Accordingly, the ALJ is required to develop a full and fair record and support his or her conclusions with substantial evidence. *Id.* at 695. In summary, "[o]nly after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may [the ALJ] then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." *Id.*

Here, the ALJ followed the analytical framework set forth in the regulations. The ALJ first applied the five-step sequential evaluation process for determining whether an individual is disabled, and determined that Sharkey was disabled because he satisfied the "paragraph B" criteria of Listing § 12.09. That is, when engaged in substance use and/or abuse, Sharkey had marked limitations in the areas of social functioning and concentration, persistence, or pace. Furthermore, the ALJ noted that Sharkey's "depression and anxiety worsened when [he] was using illegal substances or alcohol."[7] Next, the ALJ determined that if Sharkey stopped the substance use, he would continue to have a severe impairment or combination of impairments. The ALJ concluded, however, that absent the substance use, his remaining limitations were not disabling because he would have only moderate limitations in the areas of social functioning and concentration, persistence, or pace.

In contrasting between marked and moderate limitations with regard to social functioning, the ALJ noted that when Sharkey engages in substance abuse, he has difficulty interacting with others, and has lost multiple jobs due to arguing with supervisors and co-

---

[7] Administrative Record at 30.

workers.[8]   When not engaging in substance abuse, Sharkey's limitations in social functioning are only moderate as evidenced by not socializing much in the public or with family.[9]   Similarly, the ALJ found that when abusing substances Sharkey's marked limitations in the area of concentration, persistence, and pace is evidenced by attempted suicides, an inability to complete self-directed treatment regimens, sleeping throughout the day, having a need for supervision, and an inability to focus on tasks.[10]   Contrarily, when not using substances, the ALJ found that Sharkey's limitations in concentration, persistence, and pace are moderate as evidenced by Sharkey showing the ability to focus well enough to perform routine tasks.[11]   The ALJ also found that "[t]reatment notes from a mental status examination described that while [Sharkey] has bipolar disorder, overall he is able to attend and focus throughout the conversation, and his thought process is logical."[12]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly analyzed the issue of Sharkey's substance abuse in accordance with both the law and Social Security Regulations.   The Court further determines that the ALJ's substance abuse analysis is supported by substantial evidence on the record as a whole.[13]

---

[8] *See* Administrative Record at 30.

[9] *Id.* at 31.

[10] *Id.* at 30.

[11] *Id.* at 31.

[12] *Id.*

[13] In addition to the ALJ's substance abuse analysis at pages 30-31 of the administrative record, the ALJ also thoroughly reviewed Sharkey's medical history and pointed out the differences in Sharkey's abilities and limitations based on his use and nonuse of drugs and alcohol in the remainder of her decision. *See* Administrative Record at 34-37.

At this point, however, the Court's analysis does not end. Sharkey maintains that even if he abstained from drug and alcohol use, he has impairments that support a finding that he is disabled. Therefore, the Court will address the remaining issues raised by Sharkey on appeal, and determine whether absent substance use there is substantial evidence on the record as a whole to support the ALJ's determination that Sharkey is not disabled, and not entitled to SSI benefits.

### 2. *Healy's Opinions*

Sharkey argues that the ALJ failed to properly evaluate the opinions of Brenna Healy, a one-time consultative examining source. Specifically, Sharkey asserts that the ALJ incorrectly determined that Healy was not an acceptable medical source; and therefore, improperly weighed her opinions. Sharkey maintains that this matter should be remanded for further consideration and development of Healy's opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an

administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In her decision, the ALJ thoroughly addressed Healy's opinions, but as the Commissioner acknowledges and Sharkey correctly points out, the ALJ incorrectly found that Healy was a non-acceptable medical source.[14] As a licensed psychologist, Healy is an acceptable medical source under the Social Security Regulations. *See* 20 C.F.R. § 416.913(a)(2). Nevertheless, the ALJ provided the following reasons for granting "little evidentiary weight" to Healy's opinions: "She saw [Sharkey] only one time and her

---

[14] *See* Administrative Record at 34.

impressions are not consistent with the other persuasive evidence of record."[15]   The
examining relationship between Sharkey and Healy is a legitimate consideration for
weighing Healy's opinions.  The Eighth Circuit Court of Appeals has determined that the
opinions of a one-time evaluator are not entitled to controlling weight.  *Clark v. Apfel*, 141
F.3d 1253, 1256 (8th Cir. 1998) ("A one-time evaluation by a non-treating psychologist
is not entitled to controlling weight."); *see also Kelley v. Callahan*, 133 F.3d 583, 589
(8th Cir. 1998) ("The opinion of a consulting physician who examines a claimant once or
not at all does not generally constitute substantial evidence.").  Similarly, consideration
of Healy's opinions in relationship to the record as a whole is also a legitimate
consideration for weighing such opinions.  *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th
Cir. 1998) ("The ALJ may reject the conclusions of any medical expert, whether hired by
the claimant or the government, if they are inconsistent with the record as a whole.").
Moreover, in considering the entire record, and in determining Sharkey's RFC, the ALJ
made the following observations:

> Despite the complaints of allegedly disabling symptoms, there
> were significant periods of time since the alleged onset date
> during which [Sharkey] did not consistently seek treatment for
> those symptoms, which may indicate that his impairments were
> not as severe as alleged.  The medical evidence of record
> demonstrates that [Sharkey] rarely presented to the doctor on
> his own accord, and the appointments he did attend were
> facilitated per instruction of the Court, Disability
> Determination Services, or a correctional facility.  Initially
> when [Sharkey] attended a mental health appointment, he
> received a low GAF score; this was attributed to the fact that
> he had been under the influence of drugs and alcohol.  After
> [he] became substance free and was compliant with his
> medications, he demonstrated adequate cognitive functioning,
> and a normal mental status.  His GAF scores continued to
> improve.  [Sharkey] did report an inability to be around

---

[15] Administrative Record at 34.

others, so that limitation was taken into account in the residual functional capacity. . . .

Further, while [Sharkey] carries a variety of diagnosed conditions, few functional limitations result from these impairments. [Sharkey] takes medications appropriate to his conditions, which successfully treat his conditions without materially adverse side-effects (report listed minimal side effects) (Exhibit 13E). Moreover, [Sharkey] has not required hospitalization/long-term intensive treatment for any of his conditions. . . .

Notably, the record does not contain any opinions from treating or examining physicians indicating that [Sharkey] is disabled or even has limitations greater than those determined in this decision. The clinical notes are internally consistent as well as consistent with the evidence as a whole. . . .

In sum, although [Sharkey] described disabling symptoms as a result of his medical impairments, the record is not consistent with those allegations. The above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and [Sharkey's] subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on [Sharkey's] capacities which were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

(Administrative Record at 36-37.)

Having reviewed the entire record, and having fully considered the ALJ's overall disability determination, the Court finds that the ALJ adequately addressed and weighed the opinions of Healy, a one-time consultative examining source. Moreover, the Court finds that the ALJ properly considered Sharkey's medical records, observations of treating physicians, and Sharkey's own description of his limitations in making the RFC assessment

for Sharkey.[16] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record, including proper consideration of Healy's opinions. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record, including the opinions expressed by Healy. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

### 3. Third-Party Functional Report

Sharkey argues that the ALJ improperly discredited third-party statements from non-medical sources regarding his allegation of disability. Specifically, Sharkey asserts that the ALJ improperly discredited statements regarding his functional abilities from his mother, Cindy O'Neal. Sharkey concludes that this matter should be remanded for further consideration of O'Neal's statements.

When considering third-party statements concerning a claimant's symptoms or impairments, the regulations provide that an ALJ must "'carefully consider any other information you may submit about your symptoms,' including statements 'other persons provide about your pain or other symptoms.'" *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1529(c)(3)); *see also Willcockson v. Astrue*, 540 F.3d 878, 880-81 (8th Cir. 2008) ("[S]tatements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints[.]"). In other words, an ALJ may not ignore the statements of other parties regarding a claimant's condition. *Willcockson*, 540 F.3d at 881.

Here, the ALJ addressed O'Neal's third-party statement as follows:

> The third-party function report completed by Cindy O'Neal,
> [Sharkey's] mother, does not establish that [he] is disabled.
> Since Ms. O'Neal does not appear to be medically trained to

---

[16] Administrative Record at 33-37 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the testimony is questionable. Moreover, by virtue of the relationship with [Sharkey], the witness cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. In addition, great weight cannot be given to such third party statements because they, like [Sharkey's] allegations, are not consistent with the objective medical evidence as a whole.

(Administrative Record at 36-37.)

It is clear from the ALJ's decision that she considered and addressed O'Neal's statements. Furthermore the ALJ provided reasons for discounting O'Neal's statements. By providing reasons for discrediting the statements, the ALJ did more than is necessary according to the Eighth Circuit Court of Appeals, for evaluating the credibility of a third-party witness. In *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992), the Eighth Circuit determined that failure to provide any reasons for discrediting a third-party witness or statement is not error when support for discrediting such a witness or statement is found in the same evidence used by an ALJ to find that a claimant's testimony is not credible. *See also Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995) ("[A]lthough the ALJ failed to list specific reasons for discrediting the testimony of Carol Bennett, it is evident that most of her testimony concerning Lorenzen's capabilities was discredited by the same evidence that discredits Lorenzen's own testimony concerning his limitations."); *Buckner*, 646 F.3d at 559-60 (discussing *Robinson* and *Lorenzen* and applying that reasoning to testimony from the claimant's girlfriend). Because the ALJ explicitly considered O'Neal's statements and provided reasons for discrediting her statements, the Court concludes that the ALJ properly addressed the third-party statement in making her credibility

determinations. Therefore, the Court concludes that Sharkey's assertion that the ALJ improperly discredited O'Neal's third-party statement is without merit.

## V. CONCLUSION

The Court finds no error with the ALJ's substance abuse analysis. The Court also finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Healy. Moreover, the Court determines that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Finally, the Court finds that the ALJ properly discredited the third-party statement of Sharkey's mother, Cindy O'Neal. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this _14th_ day of October, 2014.

_____

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA